## Case No. 2,430.

### CARPENTER v. The EMMA JOHNSON.

[1 Cliff. 633.]

Circuit Court, D. Massachusetts. May Term, 1861.

ADMIRALTY JURISDICTION — MARITIME CONTRACT.

Admiralty has jurisdiction over a contract of affreightment between two ports in the same state, where, from the usual course of the voyage, a part of the navigation of the vessel is upon the high seas, and out of the jurisdiction of any particular state.

[Cited in The Sarah Jane, Case No. 12,349; The Leonard, Id. 8,256.]

[See note to Case No. 2,161.]

[Appeal from the district court of the United States for the district of Massachusetts.]

Admiralty appeal from a decree in a proceeding in rem by E. W. Carpenter against the schooner Emma Johnson, which was engaged in the transportation of goods between Boston and Chatham. The master undertook to carry a piano from Boston to Chatham, and deliver it there to libellant. The piano was injured on the passage, and the suit was instituted to recover damages therefor. The district court gave a decree in favor of the libellant. [Case No. 4,465.]

When the case came up to this court, the pleadings were amended, on the part of the libellant, setting forth that the schooner, at the time the contract was made, was lying at the port of Boston within the ebb and flow of the tide, and within the admiralty and maritime jurisdiction of the court; was bound over the high seas to the port of Chatham; and that the master undertook to transport the piano in the usual course of the vessel to that port. The answer alleged that the contract was for the transportation of the piano from Boston, in Massachusetts, to Chatham, in the same state, and was made and to be executed within the state, and so was not a contract within the admiralty and maritime jurisdiction of the court.

H. A. Scudder, for libellant.

The jurisdiction of the admiralty in tort depends upon the locus; in contract, upon the subject-matter. 2 Brown. Adm. 88, 90, 91, 110; Thackarey v. The Farmer [Case No. 13,852]; Menetone v. Gibbons, 3 Term R. 268.

If the contract be maritime, or to be performed upon the tide-waters, it is within the admiralty jurisdiction. Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The Orleans, 11 Pet. [36 U. S.] 175; De Lovio v. Boit [Case No. 3,776]; The Draco [Id. 4,057]; 2 Pars. Mar. Law, 511.

A contract of affreightment, like any other contract for service upon the sea, is a maritime contract, and within the jurisdiction of the admiralty. 2 Brown, Adm. 86; The Spartan [Case No. 4,085]; The Rebecca [Id. 11,619]; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 392; Fland. Shipp. 290.

A merchant shipping freight or merchandise has a maritime lien upon the ship for any damage arising from the fault or neglect of the master or the insufficiency of the vessel, which lien is a subject of admiralty jurisdiction. Wells v. Osmond, 6 Mod. 238; 2 Brown, Adm. 86, 88, 98; Menetone v. Gibbons, 3 Term R. 269; The Volunteer [Case No. 16,991]; The Rebecca [supra]; The Spartan [supra]; 1 Pars. Mar. Law, 452; Ben. Adm. 154, 203; Conk. Adm. 56; Abb. Shipp. 126.

The ancient admiralty jurisdiction, as exercised in England and in the continental courts of Europe, embraced this case. Exton, 321; Wells v. Osmond, 6 Mod. 238; 2 Brown, Adm. 86, 88; De Lovio v. Boit [Case No. 3,776]; Ben. Adm. 46 et seq.

It was within the admiralty jurisdiction of the several states before and after the Declaration of Independence, and before the adoption of the federal constitution. Talbot v. Commander of Three Brigs, 1 Dall. [1 U. S.] 103; Ben. Adm. § 118 et seq.; Id. §§ 161, 165, 166; Curt. Merch. Seam. 348, 352, 372; De Lovio v. Boit [supra]; The Magnolia, 20 How. [61 U. S.] 298.

Under the constitution and laws of the United States, and the decisions of our judicial tribunals, this case is within the admiralty and maritime jurisdiction of our federal courts. Const. U. S. art. 3, § 2; Ben. Adm. 286–288; The Volunteer [supra]; The Orleans, 11 Pet. [36 U. S.] 175; The Thomas. Jefferson, 10 Wheat. [23 U. S.] 428; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, 392; De Lovio v. Boit [supra]; 21 Law Rep. 473 [The Canton, Case No. 2,388]; 1 Stat. 77.

The several states having parted with all their admiralty and maritime jurisdiction under the constitution of the United States, and having yielded the same to the federal courts, if they have no remedy here, they are barred from their original rights. The Magnolia, 20 How. [61 U. S.] 296; Const. U. S.; 1 Stat. 77.

The cases cited and relied upon by the respondents do not touch the case before the court. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 194, was not a question of admiralty jurisdiction, but of the power of congress to regulate commerce. The Genesee Chief, 12 How. [53 U. S.] 443, and Nelson v. Leland, 22 How. [63 U. S.] 55, simply assert the admiralty jurisdiction over the western lakes and rivers; thus claiming an extension, and not a limitation, of the jurisdiction of the admiralty, as before understood. See Fland. Shipp. 316. Allen v. Newberry, 21 How. [62 U. S.] 244, is a mere judicial consideration and construction of the United States statute of 1845, deciding that said statute limits the admiralty jurisdiction upon the western lakes and rivers to commerce between ports in different.

states. Maguire v. Card, 21 How. [62 U. S.] 248, was a suit in rem against a domestic ship for supplies, and, aside from the legal defence which existed, was decided upon the authority of Allen v. Newberry [supra], and upon the same principle.

The above cases simply assert that the act of 1845 [5 Stat. 726] is valid, and that by it admiralty jurisdiction on the western lakes and rivers is limited to commerce between ports in different states, and does not touch the jurisdiction of the admiralty upon the tide-water.

O. T. & T. H. Russel, for claimants.

The contract alleged in this case is that the respondents undertook as common carriers to safely carry a piano from Boston, Massachusetts, to Chatham, in the same state. This is a question arising under the internal commerce of Massachusetts, and is not a subject of the admiralty jurisdiction of this court. It is not alleged that the contract was by charter-party or bill of lading, but that respondents were common carriers between these two places in the same state. New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 392; Allen v. Newberry, 21 How. [62 U. S.] 244; Jackson v. The Magnolia, 20 How. [61 U. S.] 302; Maguire v. Card, 21 How. [62 U. S.] 248; 2 Pars. Mar. Law, 500, 502, 504, 510, 642.

The contracts between citizens of a state are left to the tribunals of the state, excepting only specified cases. The mere fact of the vessel passing over a part of the high seas, for a short period, did not add anything of a foreign, external, or maritime character to the contract. The Genesee Chief, 12 How. [53 U. S.] 443.

CLIFFORD, Circuit Justice. It is conceded that the usual course of the schooner during a part of her voyage was upon and over the high seas, as alleged in the amended libel, and that she pursued her usual course during the trip when the damage complained of in this case occurred to the piano. But it is insisted by the counsel of the respondents that the question of jurisdiction is unaffected by the fact that the entire navigation of the vessel was not within the waters of the state; that if the contract was made in the state, and the voyage was from a port of the state to another port in the same state, then the question of liability is one arising under the internal commerce of the state, and is not a subject of admiralty jurisdiction. On the part of the libellant the whole of this doctrine is denied, and he insists that admiralty jurisdiction in matters of contract depends entirely upon the subject-matter; that if the contract be maritime, or to be performed upon tide-waters, it is within the admiralty jurisdiction; and that a contract of affreightment, like any other contract for service upon the sea, is a maritime contract,

and consequently a suit for the breach of it is within the admiralty jurisdiction. Much must depend in jurisdictional questions upon the decisions of the supreme court; and it may not be amiss to remark that, where the point has been definitively settled by that tribunal, it is the duty of this court to conform its action to their ruling as the established law. Two cases are cited by the counsel of the respondents, and chiefly relied on as showing the want of jurisdiction in this case. Allen v. Newberry, 21 How. [62 U. S.] 244; Maguire v. Card, 21 How. [62 U. S.] 248. Referring to the pleadings in the case first cited, it will be seen that the goods in question were shipped on board the vessel at the port of Two Rivers, in the state of Wisconsin, to be delivered at Milwaukee, in the same state, and the court decided that the act of congress of the 26th of February, 1845, confines the admiralty jurisdiction of the federal courts upon the lakes to matters of contract and tort arising in, upon, or concerning steamboats and other vessels employed in the business of commerce and navigation between ports and places in different states and territories upon the lakes. It does not extend, therefore, say the court, to a case where there was a shipment of goods from a port in a state to another port in the same state. But it should be observed that the rule laid down is one deduced from the previous proposition, that the act of congress had thus confined the admiralty jurisdiction as to controversies arising upon the lakes. Congress cannot create admiralty jurisdiction, because that jurisdiction is expressly granted to the federal government by the constitution of the United States; but I suppose it to be an admitted doctrine that congress may limit, or even control its exercise, by modifying or repealing existing laws, and enacting others in their place. Such jurisdiction cannot be exercised, except by courts duly constituted, and it is undoubtedly within the competency of congress to confer the power to exercise the jurisdiction upon such courts as it may see fit to establish. Exercising this right, congress has limited the jurisdiction of the federal courts, in controversies growing out of commercial transactions upon the lakes, to matters of contract and tort, arising in, upon, or concerning steamboats and other vessels employed in the business of commerce and navigation between ports and places in different states and territories bordering on those waters; but that act has no relation whatever to admiralty jurisdiction upon the high seas, or in the bays, harbors, and arms of the sea on the Atlantic coast. Dismissing that case, therefore, as one not applicable to the question before the court. I will proceed to a brief examination of the one last cited. It was a suit in rem against a steamer to recover the balance for coal furnished the steamer while lying in the port of Sacramento. She was

engaged in the business of navigation and trade in the Sacramento river exclusively, within the state of California, and of course between ports and places of the same state. Granting, for the sake of the argument, that the rule laid down in that case is applicable to the harbors, bays, and arms of the sea, still I am of the opinion that it is not an authority for the proposition maintained by the respondents, as applied to the present case, for the reason stated in the opinion of the court, that the steamer was engaged in the business of navigation and trade on the Sacramento river exclusively, within the state of California. It was a suit for supplies, to enable the steamer to navigate the purely internal waters of the state. Even supposing the rule laid down in that case was intended to be applied to the harbors, bays, and arms of the sea on the Atlantic coast, still, I must hold, until the point is otherwise decided by the supreme court, that the decision in that case has no application to a contract of affreightment, where, from the usual course of the voyage, a part of the navigation of the vessel is upon the high seas, and out of the jurisdiction of any particular state; and such, I think, must have been the views of Mr. Justice Nelson, as expressed in the case of Moore v. American Transportation Co., 24 How. [65 U. S.] 39, when he said it was the purely internal commerce and navigation of a state that is exclusively under state regulations. Great mischief would inevitably result from any rule denying admiralty jurisdiction in all cases where the place of the departure of the vessel and the place of her destination are both within the same state, when any part of the voyage is upon the high seas, for every navigator knows that in many such cases nearly the whole voyage is out of the limits of any state; and if parties, under such circumstances, can have no remedy in the admiralty courts, it is difficult to see to what tribunals they can resort for the redress of their grievances. Without pursuing the subject at this time, suffice it to say that I am clearly of the opinion that the plea to the jurisdiction of the court cannot be sustained.

---

CARPENTER (FIEDLER v.). See Case No. 4,759.

CARPENTER (FRAZER v.). See Case No. 5,069.

CARPENTER (HAINES v.). See Case No. 5,905.

CARPENTER (HOPKINS v.). See Case No. 6,686.

CARPENTER (INNES v.). See Case No. 7,049.